ROGER LEE WALKER,

Plaintiff,

v.

GREGORY J. AHERN, et. al,

Defendants.

Case No. 16-cv-04988-YGR (PR)

**ORDER GRANTING DEFENDANT AHERN'S MOTION FOR SUMMARY JUDGMENT; AND DISMISSING WITHOUT PREJUDICE REMAINING CLAIM AGAINST DOE DEFENDANTS**

## I. INTRODUCTION

Plaintiff Roger Lee Walker, who is currently in custody at the Coalinga State Hospital ("Coalinga"), is a civil detainee under California's "Sexually Violent Predators Act" ("SVPA"), California Welfare & Institutions Code § 6600 et seq. In 2016, Plaintiff was housed at the Santa Rita Jail ("SRJ") for a "period of several months while awaiting court proceedings." Dkt. 1 at 3.[1] Although it is undisputed that Plaintiff, while in custody at SRJ, was facing proceedings to have him committed as a "sexually violent predator" ("SVP"), neither party has clarified whether his status when he arrived at SRJ was that of an individual who was being committed for the first time as an SVP or that of an individual who had been committed as an SVP and was facing recommitment. Because the record is unclear, the Court in an abundance of caution assumes, arguendo, Plaintiff was not serving a term of civil commitment when he arrived at SRJ, but was a civil detainee awaiting adjudication as an SVP.

Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983, alleging constitutional violations that stem from his incarceration at SRJ in 2016. Plaintiff has since filed an amended complaint, which is the operative complaint, in an attempt to correct certain deficiencies of his original complaint. Dkt. 7. Plaintiff named Defendant Alameda County Sheriff Gregory J. Ahern and Doe Defendants 1- 20, and alleges a conditions of confinement claim against them.[2] *See id.*

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[2] The Court initially found that the amended complaint stated a cognizable Eighth

Plaintiff alleges that Defendant Ahern was the "Final Policy Maker" of SRJ and responsible under unspecified federal and state laws "to ensure that Plaintiff, a civil detainee . . . was provided clean linen and clothing; daily dayroom use; showers no less than 3 times per week; enough hygiene materials to last until the next issue [was] passed out; recreational time; and use of the telephone no less times than those inmates detained for criminal cause." *Id.* at 4. Plaintiff claims that from his arrival at SRJ on January 29, 2016 until he was transported to Coalinga two and a half months later on April 14, 2016,[3] he was placed in Administrative Segregation ("Ad. Seg.") and "effectively denied each of these minimum standards of living." *Id.* As mentioned above, Plaintiff also names various unnamed deputies who allegedly violated his constitutional rights during his detainment at SRJ until his return to Coalinga. *Id.* at 5-10. Specifically, Plaintiff has named "John Does 1-5, 7, 8" and "Jane Doe 6", who are mostly SRJ correctional officers, as those responsible for preventing Plaintiff from attaining the aforementioned "minimum standard of living." *Id.* Plaintiff has named "John Does 9-20" who were "also assigned to work [at] Building 8, POD-C . . . [and] were directly involved in the day to day care and custody of Plaintiff and their acts and/or omissions contributed to the rights violations that Plaintiff was subjected to and made no effort to report those violations or help Plaintiff get his needs met." *Id.* at 10. Plaintiff adds that John Doe 1, who was the "Captain/Commander of the Jail" and "the individual directly responsible for overseeing the Grievance Process," "cannot claim ignorance of the constitutional violations that Plaintiff suffered as he filed an Inmate Grievance Form the day he was placed in the filthy cell an additional Grievances over the course of time [he] spent in the jail." *Id.* at 6. Plaintiff claims that he "never received a response to any of those Grievances and, it appeared that the POD Deputies considered Grievances a joke, laughing about Grievances as 'shit paper' and

---

Amendment violation. Dkt. 8 at 3-5. However, because Plaintiff is a civil detainee and *not* a prisoner, then substantive due process protections of the *Fourteenth* Amendment apply to Plaintiff. *See Hydrick v. Hunter*, 500 F.3d 978, 997 (9th Cir. 2007) ("*Hydrick I*"), *rev'd on other grounds*, 556 U.S. 1256 (2009), *op. after remand, Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) ("*Hydrick II*") (holding substantive due process protections of the Fourteenth Amendment apply to civil detainees, such as SVPs). Therefore, in this Order, the Court will analyze Plaintiff's cognizable claim as a due process claim under the Fourteenth Amendment.

[3] SRJ's records indicate that Plaintiff returned to Coalinga State Hospital on or about April 14, 2016. Phixitxonh Decl. at ¶ 4, Ex. A.

[that] the 'shit paper is more effective in getting the job done th[a]n a grievance form." *Id.*

In an Order dated July 21, 2018, the Court: (1) dismissed Plaintiff's claims for injunctive relief because he was no longer incarcerated at SRJ; (2) found his amended complaint stated a cognizable conditions of confinement claim against Defendant Ahern, "John Does 1-5, 7, 8" and "Jane Doe 6"; and (3) dismissed the Defendant group of "John Does 9-20" (as opposed to individually named jail employees) because Plaintiff failed to link each jail employee to his claim of deliberate indifference. Dkt. 8 at 2, 5-6. The Court served Defendant Ahern, the only named Defendant, scheduled a briefing schedule for filing a dispositive motion, and directed Plaintiff to provide the names of Defendants "John Does 1-5, 7, 8" and "Jane Doe 6" by the date scheduled in this Order for any served Defendant to file a dispositive motion. *Id.* at 6-7. The Court further noted that the failure to provide the aforementioned names would result in dismissal of Defendants "John Does 1-5, 7, 8" and "Jane Doe 6" without prejudice to Plaintiff filing a new action against them. *Id.* at 6.

The parties are presently before the Court on a motion for summary judgment filed by Defendant Ahern (hereinafter "Defendant"). Defendant moves for summary judgment on the grounds that no genuine dispute of material fact exists and they are entitled to judgment as a matter of law because: (1) Plaintiff failed to exhaust all available administrative remedies properly as required by the Prison Litigation Reform Act ("PLRA"); and (2) Defendant is immune from suit because there is no evidence that any conduct on the part of Defendant amounted to deliberate indifference to justify imposing supervisory liability. Dkt. 20-1 at 9.[4] Although he was given the opportunity to do so, Plaintiff did not file an opposition to the motion.

Having read and considered the papers submitted, and being fully informed, the Court GRANTS Defendant's motion for summary judgment and DISMISSES without prejudice the remaining claim against Defendants "John Does 1-5, 7, 8" and "Jane Doe 6."

## II.    FACTUAL BACKGROUND

Plaintiff alleges that on January 29, 2016, he arrived at SRJ and was placed in Ad. Seg.

---

[4] On November 22, 2017, Defendant submitted a "Corrected Memorandum of Points and Authorities." *See* Dkt. 20-1.

Dkt. 7 at 4. He claims that when he arrived at his newly-assigned cell, Pod-C, Cell-8 ("Cell-8"), the "toilet was plugged up with feces and toilet paper and stunk," there were "feces spread on the walls and floors" and that "soiled and dirty bedding [had been] left on the floor by the previous cell inhabitant." *Id.* He also claims that he was forced to use the "feces infected and plugged up toilet" and denied access to any other toilet for "two days." *Id.* Plaintiff further claims that although he asked unnamed deputies for cleaning materials so that he could clean his cell, his request was denied. *Id.* Plaintiff claims that unnamed deputies also denied his requests "to be moved to a clean and sanitized cell" and "made him wait for two (2) days to have a janitor come and unstop the toilet."[5] *Id.* at 8. Lastly, as explained above, he claims that he "filed an Inmate Grievance Form the day he was placed" into Cell-8, and several others throughout the course of his detainment at SRJ, but "never received a response." *Id.* at 6.

In addition to complaints regarding the appearance of his cell, Plaintiff also claims that he was subjected to various other conditions of confinement which constituted deliberate indifference while he was at SRJ in 2016. *Id.* at 4. For example, he claims that he was "denied clean serviceable jail clothing," soap, and a clean towel. *Id.* He also claims that he was: "not permitted to leave his cell," given a "defective or nonfunctioning PIN number[6] denying him the right to call and/or contact his attorney or family," left in his cell for "24 hours per day 7 days per week" and "seldom saw daylight." *Id.* at 4-5 (footnote added).

Plaintiff asserts that Defendant is responsible for the subpar treatment he allegedly experienced during his detainment because as "the keeper of the prisoners in the Alameda County Jails," Defendant "failed to properly train and more importantly oversee and compel" the Doe Defendants to comply with applicable laws and regulations governing jail administration. *Id.* at 5.

Meanwhile, Defendant claims that he was "not directly or personally involved in the constitutional violations alleged in Plaintiff's First Amended Complaint." Ahern Decl. ¶¶ 4-12.

---

[5] Plaintiff claims that the janitor "discovered that the toilet had been plugged with a towel." Dkt. 7 at 6, fn. 2.

[6] Plaintiff states that the "Alameda County Jail inmate phones require that you enter a Personal identification Number (PIN) to access an outside line." Dkt. 7 at 9, fn. 3. He adds that "[t]hese PIN numbers are provided by the POD Floor officer." *Id.*

4

Defendant adds that he does not directly supervise or instruct SRJ deputies and did not otherwise direct them to engage in the alleged conduct via a specific policy. *Id.* ¶¶ 10-11. Finally, Defendant claims that he is also not aware, and should not be aware, of incidents that are similar to the subject of Plaintiff's amended complaint or of Plaintiff being subjected to the unconstitutional conditions of confinement he alleges in his amended complaint. *Id.* at ¶¶ 6-10.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting in part *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. A factual dispute is genuine if it "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Id.* "If the evidence is merely colorable, or is not

5

significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

A district court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendant has presented his own declaration as well as declarations from Deputy B. Nagy (Intake, Transfer and Release area), Sergeant Patrick Kennedy (Grievance Litigation Unit), and Deputy E. Phixitxonh (Classification Unit). Dkts. 19-1; 19-2; 19-3; 26. As noted, Plaintiff has not filed an opposition to Defendant's motion for summary judgment. However, since the amended complaint is verified, the Court will construe it as an opposing affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (allowing verified complaint to be considered opposing affidavit under Rule 56 to the extent it sets forth specific facts admissible into evidence).

## IV. DISCUSSION

### A. The SVPA

California's SVPA is codified at California Welfare & Institutions Code §§ 6600-6609.3. In *Hydrick I*, the Ninth Circuit summarized how the SVPA works. The SVPA defines an SVP as a person "convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others" that is, is "likely [to] engage in sexually violent criminal behavior." *Hydrick I*, 500 F.3d at 983 (citing Cal. Welf. & Inst. Code § 6600(a)). At least six months before a person who has committed the predicate offenses is to complete his sentence, he is evaluated by the Department of Corrections and Department of Mental Health. *Id.* (citing Cal. Welf. & Inst. Code § 6601). If those two departments agree that the person evaluated may be an SVP, a petition for commitment may be filed by the district attorney or counsel for the county in which the evaluated person was convicted. *Id.* (citing Cal. Welf. & Inst. Code § 6601(i)). If that person is found by a jury to be an SVP who poses a danger to the health and safety of others, he is civilly committed for an indefinite period to commence after his criminal sentence is fulfilled. *Id.*

6

(citing Cal. Welf. & Inst. Code §§ 6602-6604).

Once civilly committed, SVPs undergo a five-phase treatment program. *Id.* at 983-84. Each year, an SVP has a right to a show cause hearing to determine whether his commitment should be continued. *Id.* at 984 (citing Cal. Welf. & Inst. Code § 6605(a)-(b)). If it is found that the SVP continues to be a danger to the health or safety of the community, the person is committed for two years from the date of the finding. *Id.* (citing Cal. Welf. & Inst. Code § 6605(e)). These successive periods of commitment can be continued indefinitely, or until the SVP completes all five phases of treatment; upon successful completion of all five phases of treatment, the SVP is conditionally released under the supervision of the California Mental Health Department. *Id.*

### B. Exhaustion

Here, in the instant motion for summary judgment, Defendant argues that Plaintiff's conditions of confinement claim should be dismissed for failure to exhaust administrative remedies as required by the PLRA. Dkt. 19.

In his verified amended complaint, Plaintiff contends that he "***is not a criminal*** in any sense of the word and thus is not covered pursuant to the [PLRA]." Dkt. 7 at 3 (emphasis in original). This Court agrees. Only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are "prisoners" within the definition of 42 U.S.C. § 1997e. *See Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (individual civilly committed pursuant to California's SVPA is not a "prisoner" within meaning of 42 U.S.C. § 1997e). Plaintiff is thus not required to pursue this administrative process based upon his status as a civil detainee. *See id.* (holding civil detainees and SVPs are not required to exhaust administrative remedies before filing suit in federal court). Therefore, the Court need not resolve the question whether Plaintiff properly pursued an administrative grievance with respect to his conditions of confinement claim.

Accordingly, the Court will proceed to review the merits of Plaintiff's claim that his conditions of confinement in Ad. Seg. violated due process.

### C.     Alternative Argument

As mentioned above, viewing Plaintiff as a civil detainee who is no longer housed at SRJ, the Court evaluates Plaintiff's alleged constitutional violations that stem from his incarceration at SRJ in 2016.

In this regard, Defendant, who is being sued as a supervisor of the Doe Defendants in his individual and official capacities, presents alternative grounds in support of his summary judgment motion.  With regard to the suit against him in his individual capacity, Defendant argues that he is immune from suit because the undisputed evidence demonstrate that: (1) Defendant was not personally involved in the actions that caused Plaintiff's alleged injuries; (2) no connection exists between Defendant's alleged wrongful conduct and the conduct of the Doe Defendants; and (3) there is no evidence that any conduct on the part of Defendant amounted to deliberate indifference to justify imposing supervisory liability.  Dkt. 20-1 at 5.

Meanwhile, as to the suit against him in his official capacity, Defendant, who is the Alameda County Sheriff, "when functioning as the administrator of the local jail, is a County actor."  *King v. County of Los Angeles*, 885 F.3d 548, 558 (9th Cir. 2018) (citing *Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001)).  A county is subject to section 1983 liability "if its policies, whether set by the government's lawmakers or by those whose edicts or acts . . . may fairly be said to represent official policy, caused the particular constitutional violation at issue."  *Streit*, 236 F.3d at 559 (internal quotation marks and citation omitted).  Thus, Defendant may be held liable in his official capacity for the policies and practices of the county jails under his administrative control.  *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1190-92 (9th Cir. 2002).

#### 1.     Interests Justifying Conditions of Confinement

The Fourteenth Amendment applies to conditions of confinement claims brought by individuals who have not been convicted of a crime.  *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004).  Consequently, individuals detained on criminal charges may not be subjected to conditions that amount to punishment prior to an adjudication of guilt.  *Id.*  Similarly, "within the bounds of professional discretion," individuals who have been involuntarily committed may not be subjected

1    to conditions of confinement that amount to punishment. *Hydrick I*, 500 F.3d at 997. The

2    conditions and duration of confinement must "bear some reasonable relation to the purpose for

3    which [such] persons are committed." *See id.* (internal quotation marks and citation omitted).

4    Further, individuals who are awaiting civil commitment proceedings are entitled to protections at

5    least as great as those afforded to civilly committed individuals and to individuals accused but not

6    convicted of a crime. *Jones*, 393 F.3d at 931-32.

7        In short, under *Hydrick I* and *Jones*, individuals who are awaiting commitment as SVPs

8    may not be subjected to conditions greater than those to which a civilly committed individual may

9    be subjected and individuals who have been civilly committed as SVPs may not be subjected to

10   conditions of confinement that amount to punishment, *Hydrick I*, 500 F.3d at 997. Punitive

11   conditions may be shown where challenged restrictions are expressly intended to punish, where

12   they are excessive in relation to a non-punitive purpose, or where they are employed to achieve

13   objectives that could be accomplished by alternative and less harsh methods. *Jones*, 393 F.3d at

14   932. Additionally, a presumption of punitive conditions of confinement applies when an

15   individual awaiting adjudication as an SVP is confined "in conditions identical to, similar to, or

16   more restrictive than, those in which his criminal counterparts are held," *id.*, or "under conditions

17   more restrictive than those the individual would face following SVPA commitment," *id.* at 933.

18                          **2.    Supervisory Liability**

19       "In a § 1983 suit or a *Bivens*[7] action—where masters do not answer for the torts of their

20   servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each

21   Government official, his or her title notwithstanding, is only liable for his or her own misconduct."

22   *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (finding under *Bell Atlantic Corp. v. Twombly*, 550

23   U.S. 544 (2007), and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in

24   a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials

25   "purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest'

26   because of their race, religion, or national origin" over more likely and non-discriminatory

27

28   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
         [7] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

                                        9

explanations).

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim—and, more specifically, on the state of mind required by the particular claim—not on a generally applicable concept of supervisory liability. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).

### 3. Analysis

#### a. Analysis Relating to Conditions of Confinement

As noted, Plaintiff alleges he was subjected to conditions of confinement which violated his due process rights during his placement in Ad. Seg. at SRJ, where he was housed in conditions similar to those of pretrial criminal detainees. Again, because the record is unclear whether Plaintiff's status when he arrived at SRJ was that of an individual who was being committed for the first time as an SVP, or that of an individual who had been committed as an SVP and was facing recommitment , the Court in an abundance of caution assumes, arguendo, that Plaintiff was not serving a term of civil commitment when he arrived at SRJ, but was a civil detainee awaiting adjudication as an SVP. Consequently, the Court will apply to Plaintiff's claims the presumption of punitive conditions of confinement set forth in *Jones*.

The *Jones* presumption is a rebuttable one; when such a presumption arises, the defendant must be given an opportunity to show that legitimate, non-punitive interests justified the conditions to which an SVP was subjected, and that the restrictions imposed upon the SVP were not excessive in relation to those interests. *Jones*, 393 F.3d at 932-33.

Here, Defendant is required to rebut the *Jones* presumption that the conditions of confinement at SRJ were punitive. Defendant has submitted declarations and Plaintiff's jail records as evidence in support of his motion for summary judgment. Plaintiff has not submitted evidence in opposition, although the Court considers his sworn and verified amended complaint as

an opposing affidavit to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder*, 55 F.3d at 460 & nn.10-11.

Defendant asserts that Plaintiff had informed Deputy B. Nagy, who conducted Plaintiff's classification interview upon his arrival at SRJ, "that he wanted to be placed in protective custody in light of his status as [an SVP]." Nagy Decl. ¶ 9. In light of Plaintiff's "request to be placed in protective custody because of his status as an SVP and his extensive criminal history," Deputy Nagy classified Plaintiff as an Ad. Seg inmate and assigned him to Cell-8. *Id.* at ¶ 13. Defendant further claims that in Ad. Seg., Plaintiff was separated from SRJ's general population, "but not denied any of the general rights and privileges that are afforded to SRJ's general population inmates." *Id.* at ¶ 14. For example, Plaintiff had "access to all of the programs and services available to SRJ's general population inmates, including, but not limited to SRJ's grievance procedure." *Id.* Plaintiff was also "allowed to shave and shower at least three times per week, receive laundry, issue/exchange of regular jail clothing, bedding and linen on the same basis as inmates in the general population, have access to telephones each day during their regularly scheduled pod time, and let out of his cell at least one hour per day, five days per week for exercise." *Id.* According to Deputy Nagy, "[t]hese rights and privileges are never denied or restricted unless necessary to protect inmates and staff and to maintain security." *Id.* Thus, in essence, Defendant asserts that SRJ officials had legitimate, non-punitive interests justifying Plaintiff's placement in the SRJ protective custody housing unit and that the restrictions imposed upon Plaintiff while he was housed in protective custody were not excessive in relation to those interests. The Court also construes Defendant's argument to state that Cell-8 was the least restrictive housing they could provide for Plaintiff while also providing for the SRJ's legitimate, non-punitive interests related to maintaining jail security (including Plaintiff's own safety), ensuring Plaintiff's presence at his commitment proceedings, and the effective management of SRJ.

Meanwhile, Plaintiff claims that Defendant and the Doe Defendants violated his due process rights because he was "subjected to deliberate indifference which bordered on cruel and unusual punishment of a civil detainee." Dkt. 7 at 4. The Court construes this argument to mean

that his due process rights were violated when these Defendants subjected him to conditions of confinement at Ad. Seg in SRJ, which were punitive in nature. In essence, Plaintiff's argument is that Defendant failed to rebut the *Jones* presumption that his placement in Cell-8 was punitive. Specifically, Plaintiff seems to argue that Defendant has not produced evidence showing SRJ officials were unable to provide Plaintiff with less restrictive housing separate from penal detainees and/or prisoners, such as housing Plaintiff in Ad. Seg. apart from all other inmates but not subjecting him to the loss of privileges that is normally concomitant with such housing placement. Plaintiff, however, has not produced evidence to counter Defendant's evidence that the decision to place him in Cell-8 was based on legitimate, non-punitive interests. *See Hydrick I*, 500 F.3d at 997 (setting forth requisite showing with respect to conditions of confinement of SVPs). Instead, Plaintiff claims that the restrictions and "punishments" he faced at Ad. Seg. were *excessive* in relation to those interests, as explained below.

### 1) "Feces Infected and Plugged Up Toilet"

Plaintiff alleges that he was forced to use a "feces infected and plugged up toilet for two days" before a janitor came to fix it. Dkt. 7 at 4, 8. Plaintiff also adds that there was feces spread on the walls and floor. *Id.* at 4.

To be sure, Plaintiff did endure uncomfortable conditions when he was forced to use a "feces infested and plugged up toilet" for two days. However, Plaintiff was allowed to change his clothes (albeit to ill-fitting and dirty clothes), was still able to use the toilet to relieve himself (even though it was clogged), and states no claim that he was denied edible food or clean water. Moreover, the lack of plumbing did not last long, and it was eventually fixed by a janitor after two days. Dkt. 7 at 8. The Court also assumes that the janitor cleaned the feces-infested walls and floor after two days because Plaintiff did not specify otherwise. *See id.*

"The provision of adequate means of hygiene, and the sanitary disposal of bodily wastes so that the wastes do not contaminate the cells, are constitutionally required." *Martino v. Carey*, 563 F. Supp. 984, 999 (D.C. Or. 1983) (footnote and citations omitted). If it is severe or prolonged, a lack of sanitation can constitute an infliction of pain within the meaning of the Eighth Amendment. *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir.), *amended*, 75 F.3d 448

(9th Cir.), *cert. denied*, 516 U.S. 916 (1995); *see also Hearns v. Terhune*, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (plumbing which deprives inmates of basic hygiene and seriously threatens inmates' physical and mental well-being amounts to cruel and unusual punishment). In *Anderson*, the Ninth Circuit considered the temporary emergency detention of suicidal and/or violent inmates in dirty "safety cells" in which the "pit toilet was encrusted with excrement and urine." 45 F.3d at 1313. Plaintiffs in that case had been shackled over the pit toilet for periods of "three hours," "all night," and "an hour and a half," respectively. *Id.* The court upheld summary judgment for the defendants, finding that the plaintiffs had not shown "that the sanitary limitations imposed upon them were more than temporary." *Id.* at 1315. Though ultimately focusing on the temporary and emergency situation presented, the Ninth Circuit noted that, "[u]nquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Id.* (citing *Gee v. Estes*, 829 F.2d 1005, 1006 (10th Cir. 1987)).

Comparing these facts to those in *Anderson*, where the inmates were chained to the toilet grate, the Court again finds the deprivation here to be *less* severe because Plaintiff was not chained to the toilet or otherwise chained up in his cell and could move around, even if he could not escape from the sewage. 45 F.3d at 1313. Considering the duration, the Court finds the deprivation alleged here to be similar to that which occurred in *Anderson*, primarily because of the extremely brief confinement of the *Anderson* plaintiffs in the safety cell, ranging from several hours to one and a half days. *Id.* at 1313. As mentioned, the Ninth Circuit in *Anderson* upheld the district court's refusal to enjoin the use of the safety cell and its grant of summary judgment for the defendants, finding that the sanitary limitations imposed upon plaintiffs were temporary. *Id.* at 1315. The case law also covers situations far more egregious than what Plaintiff has alleged. In some cases, prisoners were forced to sleep or lie in sewage. *See McCord v. Maggio*, No. 88-3205,

13

927 F.2d 844, 848 (5th Cir. 1991) (inmates forced to sleep on mattresses soaked in rainwater and sewage in absence of beds); *Gee*, 829 F.2d 1005 (prisoner left lying in excrement while having a seizure); *see also Johnson v. Lewis*, 217 F.3d 726 (9th Cir. 2000) (prisoners left lying prone and handcuffed in the yard with no opportunity to get up to relieve themselves all night). However, no evidence exists indicating that Plaintiff was forced to touch the sewage or to sleep in it, nor did it contaminate his food.

In sum, the Ninth Circuit has recognized claims of severe or prolonged exposure to a lack of sanitation as rising to constitutional proportions. *See Anderson*, 45 F.3d at 1314; *Hearns*, 413 F.3d at 1041-42; *Hoptowit*, 753 F.2d at 783. If Plaintiff was exposed to conditions involving a "feces infested and plugged up toilet" as well as feces on his walls and floor for weeks or months, the conditions might rise to the level of a constitutional violation. However, Plaintiff was exposed to these particular conditions for only *two* days. And, the record shows that efforts were made to ensure the sanitation of Plaintiff's cell (i.e., a janitor unclogged the toilet). Given this short amount of time, his allegations do not rise to the level of a constitutional violation because the deprivation that he experienced, if any, was temporary. Therefore, the Court finds the evidence presented by Defendant in response to Plaintiff allegations relating to the "feces infected and plugged up toilet" to be sufficient to rebut the presumption that the conditions of confinement to which Plaintiff was subjected in SRJ were punitive.

### 2) Lack of Clean Linen, Bedding, and Clothing

The undisputed facts show that, when he was initially placed in Cell-8, Plaintiff was "denied clean linen," "forced to use soiled and dirty bedding left on the floor by the previous cell inhabitant," and "denied serviceable jail clothing." Dkt. 7 at 4. Plaintiff does not indicate the time frame he had to endure this alleged constitutional violation. *See id.* However, it seems Plaintiff was regularly issued clothing (although they were ill-fitting) because he claims that "[e]ach time it was clothing exchange, [he] was given unserviceable clothing that seldom fit his large size and in many cases were ripped and unserviceable." *Id.* at 8. Meanwhile, Defendant presents evidence that inmates housed in Ad. Seg. were allowed to "receive laundry, issue/exchange of regular jail clothing, bedding and linen on the same basis as inmates in general population." Nagy Decl. at

¶ 14.  Plaintiff does not submit any evidence to counter aforementioned Defendant's evidence.

Federal courts acknowledge the necessity for providing clean clothing and bedding on a regular basis.  *Toussaint v. Rushen*, 553 F. Supp. 1365, 1379 (N.D. Cal. 1983), *aff'd in part and vacated in part sub nom. Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984).  Many courts have concluded that temporary deprivations of bedding are not sufficiently serious to support an Eighth Amendment claim.  *See Chappell v. Mandeville*, 706 F.3d 1052, 1060-61 (9th Cir. 2013) (collecting cases); *Centeno v. Wilson*, 2011 WL 836747 (E.D. Cal. Mar. 4, 2011) (sleeping on cold floor without mattress or blanket for seven days did not violate Eighth Amendment), *aff'd by Centeno v. Wilson*, 479 Fed. App'x 101 (9th Cir. 2012) (unpublished).

Defendants do no dispute that prison officials are required to provide clean and sanitary, linen, and clothing.  However, the issue in dispute is whether the particular circumstances Plaintiff encountered rises to the level of a constitutional violation.  Under the above-cited authority, that Plaintiff had to endure such circumstances—i.e., using dirty bedding, linen, and ill-fitting clothing on a temporary basis until they were replaced—does not amount to a constitutional violation.  Thus, the Court finds the evidence presented by Defendant—relating to the alleged lack of clean linen, bedding, and clothing—sufficient to rebut the presumption that the conditions of confinement to which Plaintiff was subjected in SRJ were punitive.

### 3)  Lack of Outdoor Exercise

According to the amended complaint, while Plaintiff was housed in Cell-8 for two-and-a-half months, he was "let out of his Ad. Seg. Cell once every three to four days for 60 minutes of less, depending on the attitude of the officers and when, and if, they decided to let him out."  Dkt. 7 at 5.  Plaintiff adds that when his "dayroom and/or yard was denied on his scheduled day," unnamed deputies "would come at or after midnight and give him a 'take-it-or-leave-it' offer to go out to the yard."  *Id.*  Plaintiff adds that "[i]f [he] went to the midnight yard, he was not provided with a winter coat or other warm clothing and thus was forced to endure shivering from the cold weather of a January night.  *Id.*  Plaintiff's claim will be construed as the constructive denial of outdoor exercise.  Meanwhile, Defendant has presented Deputy Nagy's declaration, which states

that inmates housed in Ad. Seg. at SRJ are "let out of their cells at least one hour per day, five days per week for exercise." Nagy Decl. at ¶ 14.

Exercise is one of the basic human necessities protected by the Eighth Amendment. *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993); *Toussaint*, 553 F. Supp. at 1380. Some form of regular exercise, including outdoor exercise, "is extremely important to the psychological and physical well-being" of prisoners. *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979). Prison officials therefore may not deprive prisoners of regular exercise. *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1393 (N.D. Cal. 1984), *aff'd in part, rev'd in part on other grounds*, 801 F.2d 1080 (9th Cir. 1986)).

Prisoners "confined to continuous and long-term segregation" may not be deprived of outdoor exercise. *Keenan v. Hall*, 83 F.3d 1083, 1089-90 (9th Cir. 1996); *see, e.g.*, *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010) (fourteen-month deprivation of outdoor exercise sufficiently serious to satisfy objective component of Eighth Amendment analysis); *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc) (denial of outdoor exercise for 6-1/2 weeks meets objective prong of Eighth Amendment claim); *Keenan*, 83 F.3d at 1089-90 (denial of outdoor exercise for six months while in segregation sufficient to proceed to trial); *Allen v. Sakai*, 48 F.3d 1082, 1087-88 (9th Cir. 1994) (forty-five minutes of outdoor exercise per week for inmate indefinitely housed in secured housing unit met objective requirement of Eighth Amendment analysis). However, a temporary twenty-one day denial of outdoor exercise, with no medical effects is not a substantial deprivation under the Eighth Amendment. *May v. Baldwin*, 109 F.3d 557, 565-66 (9th Cir. 1997).

This situation is distinguishable from most cases because Plaintiff had opportunities to exercise outdoors. As mentioned above, Plaintiff concedes that he was allowed to exercise every three to four days for sixty minutes. Dkt. 7 at 5. And during the times he was denied this privilege during his scheduled days, he was offered access to the "midnight yard." *Id.* While Plaintiff complains of "shivering" during the "midnight yard" due to cold weather and light clothing, there is no evidence to show that he declined the offered access to the "midnight yard." Although he was uncomfortable, nothing in the record shows that Plaintiff became ill from

exposure to cold or that he suffered any physical ailments from any alleged denial to outdoor exercise. These facts do not sustain Plaintiff's argument that he was "constructively denied" outdoor exercise. Also, that Plaintiff was in Cell-8 for only two and a half months means that the deprivation that he experienced, if any, was temporary. Therefore, the Court finds the evidence presented by Defendant sufficient to rebut the presumption that the conditions of confinement—relating to an alleged lack of outdoor exercise—to which Plaintiff was subjected in SRJ were punitive.

### 4) Denial of Soap, Towel, and Cleaning Materials

Plaintiff alleges that unnamed deputies did not provide him with sufficient soap and a "clean towel" to take care of his basic hygiene needs as well as cleaning materials to clean his cell. Dkt. 7 at 4. Plaintiff claims that his attorney "put monies on Plaintiff's 'books' so he could buy soap." *Id.* Thus, the evidence shows that Plaintiff had some access to soap because states he "rel[ied] upon his appointed counsel to put monies on his jail trust account so that he could purchase soap as the small container of liquid soap given once per week did not last more than one shower." *Id.* at 7. Plaintiff also states that during the two days his toilet was "plugged up," he "use[d] his only towel to cover the toilet to reduce the pungent odor." *Id.* at 8. He claims that he was denied "use of that towel—[he was] only issued one—and he had to take bird baths in his cell as he was denied dayroom time to shower and air dry himself." *Id.* Again, Plaintiff does not indicate how long he was denied access to a clean towel or to the dayroom to shower. Defendant has submitted contrary evidence in the form of Deputy Nagy's declaration, which states that Ad. Seg. inmates are "allowed to shave and shower at least three times per week." Nagy Decl. at ¶ 14.

It is well established that the Eighth Amendment requires prison official to provide indigent inmates with personal hygiene supplies such as soap and toothbrushes. *See Keenan*, 83 F.3d at 1091. Furthermore, prisoners may be entitled to appropriate materials to clean their cells depending on the overall squalor of the institution. *See Hoptowit*, 753 F.2d at 784; *Toussaint*, 553 F. Supp. at 1385.

The record shows that Plaintiff concedes that the unnamed deputies provided Plaintiff with some soap, but it was liquid soap rather than a solid bar of soap. Dkt. 7 at 7. The uncontroverted

evidence shows that if Plaintiff ran out of liquid soap during the relevant time period, he was able to purchase soap from the commissary with the help of funds from his appointed counsel. *Id.* Thus, the undisputed facts underlying Plaintiff's conclusory claim that he was denied soap are insufficient to amount to a constitutional violation. Furthermore, the record shows that Plaintiff was offered access to a towel, but he chose to soil it by covering the "plugged up" toilet with it. Plaintiff does not indicate whether he took advantage of the jail's laundry facilities to clean his towel. And lastly, even if Plaintiff claims he was denied "cleaning materials," the record shows that jail officials summoned a janitor to help unclog his toilet. Dkt. 7 at 8. Therefore, the Court finds the evidence presented by Defendant in response to Plaintiff allegations—relating to the denial of soap, towel, and cleaning materials—to be sufficient to rebut the presumption that the conditions of confinement to which Plaintiff was subjected in SRJ were punitive.

### 5)    Lack of Access to Phone

Finally, Plaintiff claims that unnamed deputies gave him "a defective or nonfunctioning PIN number denying him the right to call and/or contact his attorney or family on those few occasions he was given dayroom time." Dkt. 7 at 4. He claims that during the two and a half months that he was at SRJ, he was "never able to make any calls as the PINs given [to] him never worked . . . ." *Id.* at 9, fn. 3. Defendant has submitted Deputy Nagy's declaration, which states that inmates in Ad. Seg. are allowed to "have access to telephones each day during their regularly scheduled pod time." Nagy Decl. at ¶ 14.

Part of the process due a person if his liberty is taken is the opportunity to communicate with someone outside the institution, at a time and in a manner consistent with practical management of booking and confinement procedures and institutional security and order. *See Halvorsen v. Baird*, 146 F.3d 680, 689 (9th Cir. 1998); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1045-47 (9th Cir. 2002) (restriction on telephone access not punishment where government purpose was to prevent pretrial detainee from tipping off his codefendants that they were about to be arrested and where he was provided with other means to contact people outside prison). Although a call need not be allowed immediately upon entry into a facility, that does not absolve the facility of the obligation to allow a call by a reasonable means and within a reasonable time.

See id. at 690 (holding that plaintiff's six hour incommunicado confinement in detox facility not "too short, as a matter of law, to entitle him to communicate."). That a person is committed civilly, rather than criminally, does not diminish his right not to be held incommunicado. *See id* at 689. However, a total denial of access to the telephone for convicted prisoners does not violate the Eighth Amendment. *See Toussaint*, 597 F. Supp. at 1413 (holding complete denial of telephone access does not violate Eighth Amendment).

A right to telephone calls may arise from the right of access to the courts. Prisoners are guaranteed under the Fourteenth Amendment the right to adequate, effective and meaningful access to the courts, of which the right of access to access counsel is an essential component. See *Bounds v. Smith*, 430 U.S. 817, 820, 822-23 (1983); *Ching v. Lewis*, 895 F.2d 608, 609-10 (9th Cir. 1990). However, this right will not be violated if prison officials can show that limitations are "reasonably related to legitimate penological interests." *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993).

Here, however, the record shows that Plaintiff was able to communicate with his appointed counsel even though he was allegedly denied telephone access because he was able to request for money to buy soap. *See* Dkt. 7 at 4. Thus, Plaintiff was not denied the opportunity to communicate his need for soap to his appointed counsel in other ways, i.e., in person or through the mail. Also, nowhere in his amended complaint does Plaintiff allege that any denial of access to the telephone during his two-and-a-half month stay in Ad. Seg. at SRJ affected his ability to communicate with his attorney relating to his court proceedings. Other than his complaint that the PIN numbers were "defective or nonfunctioning," Plaintiff has alleged no facts which indicate that his *only* means of communicating with his attorney was by telephone and that because of his lack of access to the telephone he personally had been denied reasonable access to his counsel. Therefore, the Court finds the evidence presented by Defendant in response to Plaintiff's allegations relating to the denial telephone access to be sufficient to rebut the presumption that the conditions of confinement to which Plaintiff was subjected in SRJ were punitive.

### b. Analysis Relating to Defendant's Liability in His Individual Capacity

The Court has analyzed Plaintiff's conditions of confinement claims above and has found that Defendant presented evidence sufficient to rebut the presumption that the conditions of confinement to which Plaintiff was subjected in SRJ were punitive. However, assuming arguendo that there did not exist legitimate, non-punitive interests justifying how SRJ officials housed Plaintiff, Defendant argues that Plaintiff has failed to show that Defendant was aware that the housing conditions in Ad. Seg. at SRJ posed a substantial risk to health or safety, let alone that Defendant deliberately disregarded such a risk. Dkt. 20-1 at 13-15. Specifically, Defendant has submitted evidence showing the following: (1) due to the "largely administrative nature of [Defendant's] role as Sheriff, [he] rarely, if ever, come[s] into contact with Alameda County Jail inmates, Ahern Decl. at ¶ 3; (2) Defendant does not know Plaintiff personally and "ha[s] never had any interaction with him in [his] capacity of Sheriff before, during or after the events that are the subject of this litigation," *id.* at ¶ 4; (3) Defendant has "personal knowledge of the provisions of the Alameda County Sheriff Office's Detention and Corrections Policy and Procedure [("ACSO P&P")] that govern Alameda County Jail facilities and of the applicable laws and regulations concerning jail management," *id.* at ¶ 5; (4) Defendant does not know of and has not received any complaints, memos, reports or other communications concerning [Plaintiff's] claims regarding unconstitutional conditions he allegedly endured at [SRJ]," *id.* at ¶ 6; (5) Defendant did not have "direct supervisory authority over any Alameda County Jail deputies," is "not directly responsible for training SRJ deputies on an aspect of the [ACSO P&P]," and does not directly supervise, train or direct daily operations of SRJ deputies in the course and scope of [his] duties as Sheriff," *id.* at ¶ 10, and (6) Defendant has "not received any complaints, memos, reports or other communications about [Plaintiff] not being accorded proper treatment in accordance with ACSO P&P and the relevant laws and regulations concerning jail administration" and Defendant is "unaware of any evidence that suggests that a specific SRJ staff member(s) regularly and consistently violated any aspect [of] the [ACSO P&P] or any other law or regulation in regard to the conditions of [Plaintiff's] confinement at SRJ before, during or after the events that are the subject of this litigation, *id.* at ¶ 11; and (7) if Defendant "had been aware or was currently aware

20

of any such alleged violation, [he] would take the necessary steps to ensure that proper supervisors were advised do that the allegations could be investigated and, if verified, remedied and that any necessary further training could be conducted to address the relevant violations(s), if any, *id.* at ¶ 12.

As mentioned above, a supervisor may be liable in his individual capacity under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A.*, 678 F.3d at 1003-04.

### 1)	Personal Involvement

Plaintiff states in his verified amended complaint that Defendant as "The Administrator" and "The Final Policy Maker" of SJR, he "failed to protect and provide for Plaintiff's needs causing him to be subjected to conditions of confinement which constitutes deliberate indifference." Dkt. 7 at 4. Plaintiff's conclusory statements are insufficient to raise a triable issue of fact regarding Defendant's awareness of the challenged conditions of confinement. *See Taylor v. List*, 880 F.2d 1040, 1045 n.3 (9th Cir. 1989) (To raise an issue of material fact, a statement must be made on personal knowledge, not on information and belief).

In his amended complaint, Plaintiff also states that Defendant, as "keeper of the prisoners in the Alameda County Jails, failed to properly train and, more importantly, oversee and compel his subordinate officers including but not limited to the Jail Captain, Lieutenants, Sergeants and deputy sheriffs, in the application of federal and state laws in the treatment of civil detainees . . . ." Dkt. 7 at 5. Plaintiff adds that "[t]his failure on the part of [Defendant] was the proximate cause of the violations Plaintiff suffered and further caused Plaintiff to live in inhuman and substandard conditions." *Id.* These are also conclusory statements, unsupported by factual data, which cannot raise a triable issue of material fact on summary judgment. *See Taylor*, 880 F.2d at 1045.

Defendant argues that "there is absolutely no evidence that [he] was directly and personally involved in any alleged constitutional deprivations." Dkt. 20-1 at 14 (citing Ahern Decl. ¶¶ 6-12). Defendant points out that "Plaintiff does not even allege that [Defendant] was personally involved in the alleged constitutional violations." *Id.* (citing generally, Dkt. 7).

Moreover, Defendant states that "Plaintiff even specifically averred in his [amended complaint] that the alleged violations were caused by unnamed "POD Deputies," not Defendant. *See* Dkt. 7 at 5. This Court agrees with Defendant. Therefore, Plaintiff has failed to present evidence showing that Defendant is liable under section 1983 based on the *first* means of imposing supervisory liability—personal involvement in the constitutional deprivation.

### 2)    Causal Connection

Defendant argues that "the only way [Defendant] could possibly be held liable for Plaintiff's injuries pursuant to the theory of deliberate indifference is if the evidence demonstrates that there was a sufficient casual connection between his wrongful conduct and the unnamed POD Deputies' alleged conduct." Dkt. 20-1 at 14.

The Ninth Circuit's detailed analysis of the second means of imposing supervisory liability in *Starr* is pertinent to the analysis of Plaintiff's supervisory liability claim. In *Starr*, the Ninth Circuit reversed the district court's decision granting a motion to dismiss a supervisory liability claim for deliberate indifference against the sheriff of Los Angeles County "because he knew or should have known about the dangers in the Los Angeles County Jail, and . . . was deliberately indifferent to those dangers." 652 F.3d at 1204-05, 1216. The plaintiff's complaint contained detailed allegations concerning the sheriff's knowledge of his subordinates' unlawfulness. In determining the sheriff's culpability for his inaction, however, the Court permitted the claim to go forward because a state statute held the sheriff "answerable for the prisoner's safekeeping." *Id.* at 1208. Specifically, the Ninth Circuit found the following allegations in the complaint sufficient to show that the sheriff was deliberately indifferent: (1) pursuant to an investigation by the Department of Justice ("DOJ") into conditions at Los Angeles County jails in 1997, the sheriff, then a supervisor, was given written notice in a DOJ findings letter of serious pattern and practices of constitutional violations; (2) the sheriff received weekly reports from his subordinates responsible for reporting deaths and injuries in the jails and received ongoing reports of his Special Counsel and Office of Independent Review; (3) in 1999, under threat of a lawsuit by the DOJ, the sheriff submitted to a Memorandum of Understanding ("MOU") with the DOJ which required him to address and correct the continuous constitutional violations; (4) in 2005, the DOJ

issued a report finding noncompliance with many of its recommendations regarding the abuse of inmates; and (5) specific inmates were severely beaten and killed. *Id.* at 1209-11.

However, *Starr* does not assist Plaintiff in the instant matter. First, *Starr* addressed a motion to dismiss, which merely requires that the complaint include allegations sufficient to state a claim. *Id.* at 1204. In contrast, the present case is at the *summary judgment* stage where Plaintiff must offer admissible evidence to raise a disputed issue for trial. As discussed above, the allegations in the amended complaint, which consist of conclusory statements, are insufficient to raise a disputed issue for trial. Second, unlike Plaintiff's allegations in the instant matter, the allegations in *Starr* were specific. Plaintiff's allegations of knowledge by Defendant come nowhere near the facts averred by the *Starr* plaintiff as follows:

> Starr specifically alleges numerous incidents in which inmates in Los Angeles County jails have been killed or injured because of the culpable actions of the subordinates of Sheriff Baca. The complaint specifically alleges that Sheriff Baca was given notice of all of these incidents. It specifically alleges, in addition, that Sheriff Baca was given notice, in several reports, of systematic problems in the county jails under his supervision that have resulted in these deaths and injuries.

652 F.3d at 1216. For instance, the allegation that the DOJ issued a report finding that the sheriff was noncompliant with the MOU in which he promised to rectify many of the issues in the plaintiff's claims, was *direct evidence* that he was fully aware of the unconstitutional conditions and failed to rectify them. *See id.* at 1209. Here, Plaintiff claims in a conclusory fashion that Defendant's "acts or omissions [were] the proximate cause of the rights violations" he allegedly endured, which included violations of his constitutional rights. Dkt. 7 at 5. Plaintiff, however, does not establish a causal connection between Defendant's alleged failure to properly supervise the unnamed deputies and the allegedly wrongfully conduct he endured at the hands of these deputies. *See generally* Dkt. 7; *see also* Ahern Decl. ¶¶ 6-12. Plaintiff also fails to present evidence that these unnamed deputies frequently and consistently commit constitutional violations like the ones he allegedly endured, or that Defendant was aware of, or should be aware of such violations. *See generally* Dkt. 7; *see also* Ahern Decl. ¶¶ 8-10.

### c. Analysis Relating to Defendant's Liability in His Official Capacity

Further, no evidence exists showing that the unnamed deputies' alleged conduct was directed by a specific policy set in motion by Defendant, that they acted in accordance with the policy to cause Plaintiff's alleged injuries, or that Defendant failed to properly train or supervise them in their exercise of such a policy. *Id.* As such, Defendant in his official capacity may *not* be held liable for damages for any aspect of Plaintiff's detention that could have violated the Due Process Clause. *Cf. King*, 885 F.3d at 559 (because the conditions of SVP detainee King's confinement were governed by two unit orders or policies issued by the Los Angeles County Sheriff's Department, the County and Sheriff Baca in his official capacity may be held liable in damages for any aspect of King's detention that violated the Due Process Clause). The Court points out the Ninth Circuit's has put recent emphasis on a County Sheriff's liability for damages based on a suit in his *official* capacity because of the *presence* of "policies [which] 'guided, or at least governed' the actions of [jail] officials in their treatment of [the plaintiff]." *Id.* (reversing and remanding grant of summary judgment in favor of County and Sheriff in his official capacity due to presence of jail policies that governed conditions of confinement). Again, in the instant matter, Plaintiff fails to show the existence of any such policies and no evidence exists showing that the unnamed deputies' alleged conduct was directed by a specific policy set in motion by Defendant. Finally, even if such policies existed, the facts in *King* are distinguishable from those in the present case because King was confined as a civil detainee in jail for almost eight years while Plaintiff here was confined at SRJ for two and a half months. The Ninth Circuit stressed that in evaluating any rebuttal to the *Jones* presumptions on remand, the district court should take into consideration the "extended period during which King was held in [the jail]," stating as follows:

> It is one thing to confine an SVP detainee in a county jail for a *few months* while awaiting adjudication of a civil commitment petition. For such brief periods, it may be justifiable to hold him in an SVP unit and to subject him to many of the jail's rules and policies. . . . However, it is quite another thing to confine an SVP detainee for an extended period in a county jail's SVP unit or [Ad. Seg.] In this case, King was confined as a civil detainee in [the jail] for almost *eight years*—in the SVP unit for a year and three months, and in [Ad. Seg.] for six and a half years.

*Id.* at 558 (emphasis added).

#### d.     Summary

In sum, because Plaintiff has failed to show that there is genuine dispute of material fact with respect to (1) Defendant's personal involvement in the constitutional deprivation or (2) a sufficient causal connection between Defendant's wrongful conduct and the constitutional violation, Defendant is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323. Furthermore, Plaintiff has failed to show that there is a genuine dispute of material fact with respect to the existence of a policy which governed his treatment at SRJ or that such policy caused any of the alleged constitutional violations at issue.  Accordingly, Defendant is entitled to summary judgment as a matter of law on Plaintiff's conditions of confinement claim against Defendant in his individual and official capacities.  Therefore, Defendant's motion for summary judgment is GRANTED on this ground.

### D.     Doe Defendants

In its Order of Service dated July 21, 2017, the Court found the amended complaint alleged a cognizable conditions of confinement claim against Defendants "John Does 1-5, 7, 8" and "Jane Doe 6," which is now the only remaining claim in this action. Dkt. 8 at 5.

The use of Doe Defendants is not favored in the Ninth Circuit.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them.  *Id.*  Failure to afford the plaintiff such an opportunity is error.  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

In its July 21, 2017 Order, the Court directed Plaintiff to provide the names of Defendants "John Does 1-5, 7, 8" and "Jane Doe 6" by the date scheduled in this Order for any served Defendant to file a dispositive motion, which should have been on November 21, 2017 (the date the present motion for summary judgment was originally filed).  Dkt. 8 at 6-7.  The Court further noted that the failure to provide the aforementioned names would result in dismissal of Defendants "John Does 1-5, 7, 8" and "Jane Doe 6" without prejudice to Plaintiff filing a new action against them.  *Id.* at 6.  Therefore, Plaintiff was afforded an opportunity to identify the aforementioned Doe Defendants, but he has not done so.  And the time to do so has passed.

Accordingly, the remaining conditions of confinement claim against Defendants "John Does 1-5, 7, 8" and "Jane Doe 6" is DISMISSED from the action without prejudice.

**V.      CONCLUSION**

For the reasons outlined above, the Court orders as follows:

1.      Defendant's motion for summary judgment is GRANTED.  Dkt. 19.

2.      Plaintiff's remaining conditions of confinement claim against Defendants "John Does 1-5, 7, 8" and "Jane Doe 6" is DISMISSED from the action without prejudice to Plaintiff filing a new action against them.

3.      The Clerk of the Court shall terminate all pending motions and close the file.  All parties shall bear their own costs.

4.      This Order terminates Docket No. 19.

IT IS SO ORDERED.

Dated: May 17, 2018

_____
YVONNE GONZALEZ ROGERS
United States District Judge